IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| WILLIAM W. CHOATE, P.E., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 07-CV-206-JHP |
| | ) | |
| ROY EDWARD LEMMINGS, individually, | ) | |
| STEVE SAXON, individually, | ) | |
| BRYANT BAKER, individually, | ) | |
| ANGELA DEGRASSINIDE, individually, | ) | |
| TROY DONER, individually, | ) | |
| THE STATE OF OKLAHOMA, ex rel., | ) | |
| Office of the State Fire Marshall, | ) | |
| THE CITY OF SEMINOLE, OKLAHOMA, | ) | |
| ex rel., Office of Code Enforcement, and | ) | |
| agencies and individuals yet unidentified. | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER AND OPINION

Before the Court are Defendant Doner's Motion to Dismiss and Brief [Docket No. 39], Plaintiff Choate's Objections to Defendant Doner's Motion to Dismiss and Brief [Docket No. 54], and Defendant Doner's Reply to Plaintiff's Objection to Defendant Doner's Motion to Dismiss [Docket No. 65].

## Background

On July 15, 2005, Plaintiff, a licensed attorney and professional engineer, purchased a building previously owned by the First United Methodist Church. Prior to Plaintiff's purchase of the building, officials of the City of Seminole, Oklahoma, had issued numerous notices and posted warning signs concerning various building code violations. Those, and more recently issued, notices

1

and warnings have been the subject of an ongoing dispute between Plaintiff and the City of Seminole since Plaintiff first purchased the building in 2005, spawning at least one state case currently on appeal before the Oklahoma Supreme Court.

On January 7, 2007, a fire destroyed significant portions of the building's exterior walls. Claiming that the remaining portions of the building posed a threat to public safety, Seminole Fire Chief Roy Edward Lemmings hired contractor Troy Doner to raze the building. The remainder of the building was razed by Doner on January 8, 2007.

On July 3, 2007, Plaintiff instituted the present action in this Court, asserting claims against the various individuals and governmental entities involved in the demolition of the building. In particular, Count II of the Complaint states:

> As the result of the actions of the said Defendan[t] Doner, Plaintiff has been deprived of his rights and privileges to use his property under the United States Constitution and its laws, without due process, in violation of 42 U.S.C. 1983.

(Pl.'s Compl. ¶ 35 at 7.) Plaintiff's claim against Doner is thus a § 1983 involving an underlying allegation of due process violations on the part of Doner.

On September 4, 2007, Doner filed the instant motion requesting that the Court dismiss Plaintiff's claims against him. In his motion[1], Doner first asks this Court to dismiss the action pursuant to Fed. R. Civ. P. 17(a) claiming that Plaintiff is not the real party in interest. In that same Motion, Doner also asks this Court to dismiss the §1983 claim against him alleging that he is entitled to qualified immunity. Additionally, in his Reply, Doner asks the Court to join the Wesley House

---

[1] The Court construes Doner's Motion to Dismiss as two separate motions: a Rule 17(a) Motion to Dismiss and a Rule 12(b)(6) Motion to Dismiss based on the Defense of Qualified Immunity. The Court reminds Doner of Local Civil Rule 7.1(c), which requires each motion to be filed as a separate pleading.

Irrevocable Trust as a necessary plaintiff pursuant to Fed. R. Civ. P. 19(a)[2]. In that same Reply, Doner raises yet another grounds for dismissal, alleging that he was not a state actor for purposes of § 1983 when he demolished Plaintiff's church building. The Court addresses each motion in turn.

**A. Doner's Rule 17(a) Motion to Dismiss**

Fed. R. Civ. P. 17(a) provides that "every action shall be prosecuted in the name of the real party in interest." In the present case, Doner's Motion alleges that the church building in question is not owned by the Plaintiff. Doner alleges that the Wesley House Irrevocable Trust ("the Trust") is the actual owner of the church building, and because Plaintiff is not a trustee of the Trust, Plaintiff has no interest in the church building. Plaintiff, however, admits deeding an interest in the property to the Trust, but claims that the deed expressly reserved a life estate in the property in the name of the Plaintiff.

Having examined the copy of the deed provided by Plaintiff [Docket No. 40-2], the Court is satisfied that Plaintiff, by way of his life estate in the property, is a proper party of interest. Therefore, Doner's Rule 17(a) Motion to Dismiss is DENIED.

**A. Doner's Rule 19(a) Motion to Join a Necessary Party**

Doner's Reply argues that even if Plaintiff is a proper part of interest, the deed conveying an interest in the church building renders the Trust a necessary party to the litigation. A person or entity is "necessary" under Rule 19(a) if:

> (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a

---

[2] The Court construes Doner's Reply as a Rule 19(a) Motion to Join a Necessary Party and a Rule 12(b)(6) Motion to Dismiss. The Court once again reminds Doner of Local Civil Rule 7.1(c), which requires each motion to be filed as a separate pleading.

> practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest.

Fed. R. Civ. P.19(a). Rule 19 further elaborates that should a person or entity be deemed "necessary" they must be joined as a party so long as joinder is feasible. *Id.*

In this case, Doner argues that he would be "subjected to a substantial risk of incurring obligations to the [T]rust due to its interest it holds subject to the life estate." (Def.'s Reply at 2.) Doner's fear is that he could be forced to pay a judgment to Plaintiff in this case, only to then be sued by the Trust, possibly forcing him to pay a second judgment. Doner's argument presumes that the Trust, as holder of a remainder interest in the church building, has the right to sue Doner. The Court recognizes Plaintiff alleges permanent damage to property in which the Trust holds a remainder interest. Permanent damage to the church structure certainly implicates the rights of the Trust, and would give the Trust a right to preserve its property, should it choose to do so. *See Oldham v. Noble*, 66 N.E. 2d 614 (Ind. App. 1946); *Franklin v. Margay Oil Corp.*, 153 P.2d 486 (Okla. 1944). The interests of Plaintiff and the Trust are seemingly aligned, but there certainly exists the possibility that, should it not be joined as a plaintiff, the Trust would seek to vindicate its rights against Doner in a separate, and subsequent action. The Court, therefore, is satisfied there is a substantial risk of Doner incurring multiple obligations should the Trust not be joined as a necessary party under Rule 19(a). The Court also sees no reason why joinder of the Trust would not be feasible.

Therefore, Doner's Motion to Join a Necessary Party Pursuant to Fed. R. Civ. P. 19(a) must be GRANTED, and the Court orders the joinder of the Trust as a necessary plaintiff in the present action.

**C. Doner's Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim[3]**

The court applies the standards of Rule 12(b)(6) to determine if Plaintiff's allegation that Doner acted under color of state law is sufficient to state a claim upon which relief can be granted. *See E.F. W. v. St. Stephen's Indian High School*, 264 F.3d 1297, 1305 (10th Cir. 2001) (reviewing "color of state law" allegation under Rule 12(b)(6)). Pursuant to Rule 12(b)(6), a party may move to dismiss a claim for relief on the basis that it fails to state any claims upon which relief may be granted. In undertaking a Rule 12(b)(6) analysis, the Court accepts all well-pleaded allegations in a complaint as true and construes them in the light most favorable to the plaintiff. *See Williams v. Meese*, 926 F.2d 994, 997 (10th Cir. 1991). Under the liberal pleading rules set out by the Supreme Court in *Conley v. Gibson*, "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." 355 U.S. 41, 45-46 (1957).

42 U.S.C. § 1983 gives private citizens a remedy for deprivation of federally secured rights. The Supreme Court has described §1983's purpose as being "to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails." *Wyatt v. Cole*, 504 U.S. 158, 161 (1992). To recover under § 1983, a plaintiff must generally show that the alleged deprivation was committed by a person acting under the color of state law. *E.F.W.*, 264 F.3d at 1305. A defendant acts under the color of state law when he "exercise[s] power possessed by virtue of state law, and made possible only because the wrongdoer is clothed with the authority of state law." *Id*. (internal citations omitted).

---

[3]The Court addresses this grounds for dismissal next because the issue of qualified immunity only becomes relevant upon a determination that Doner acted under color of state law.

In the present case, the Court must accept the well-pleaded allegations in the complaint as true, construe them most favorably to the Plaintiff, and determine whether Plaintiff can prove any set of facts establishing that Doner acted under color of state law. *E.F.W. v. St. Stephen's Indian High School*, 264 F.3d 1297, 1305 (10th Cir. 2001).

There is no doubt that Doner is at most times a private citizen, more precisely an independent contractor. The issue raised by Doner's motion is whether Doner was "clothed with the authority of state law" when he was hired by the City of Seminole to raze Plaintiff's church building. The record shows that after the fire that partially consumed the church building was extinguished, the City of Seminole Fire Department became concerned about a wall that it claims was leaning towards a public street. The Fire Department felt that this wall posed a hazard to public safety and that it needed to be razed. The Fire Department contacted the Office of the State Fire Marshall, informed them of the situation, and was told by the Fire Marshall to do what was necessary to make the scene safe. Plaintiff alleges that the Fire Marshall relied upon Okla. Stat. tit. 74 §§ 317 and 324.8 as its authority for authorizing the razing. Section 317 provides, in pertinent part:

> Whenever any of the officers shall find any building or other structure which for the want of proper repair, or by reason of age and dilapidated condition, or for any cause is especially liable to fire, and which is so situated as to endanger other buildings or property, or so occupied that a fire would endanger persons and property therein, the officers shall order the building or buildings to be repaired, torn down, demolished, materials removed and all dangerous conditions remedied.

Okla. Stat. tit. 74 § 317. Section 324.8 simply reiterates the power of a municipality to regulate the use of land within its boundaries. *See* Okla. Stat. tit. 74 § 324.8. At no time, however, has the City asserted that it relied on those two statutory provisions in razing the church building. The City

instead seemingly[4] asserts its authority pursuant to Local Ordinance § 8-415(a) which is authorized by Okla. Stat. tit. 50 § 16:

> Cities and towns in this state shall have the right and power to determine what is and what shall constitute a nuisance within their respective corporate limits, and for the protection of the public health, the public parks and the public water supply, shall have such power outside of the corporate limits; and wherever it is practical so to do, said cities and towns shall have the power summarily to abate any such nuisance after notice to the owner, and an opportunity for him to be heard, if this can be given.

While it unclear to this Court exactly what statutory authority the City was acting under in ordering Doner to raze the building, the Court is convinced that the particular state authority relied upon has little relevance to its analysis of Doner's Motion. For the purposes of this Rule 12(b)(6) motion the Court simply takes Plaintiff's allegation that the City relied upon Okla. Stat. tit. 74 §§ 317 and 324.8 as true. Thus, it is clear that Plaintiff has satisfied Rule 12(b)(6)'s low standard by properly alleging that Doner acted under the color of state law in razing his building.

Therefore, Doner's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) must be DENIED.

**D. Doner's Rule 12(b)(6) Motion to Dismiss based on the Defense of Qualified Immunity**

The doctrine of qualified immunity shields government officials from individual liability when they are performing discretionary functions that do not violate clearly established statutory

---

[4] Three letters included by Plaintiff with his Objections to Motion to Dismiss and Brief [Docket No. 16 at 16-18] seem to indicate that the City has asserted a reliance on Okla. Stat. tit. 50 §16 throughout the course of this dispute. In responding to a letter dated March 16, 2007, sent by Plaintiff to the Office of the State Fire Marshal in an attempt to appeal the City's "Notice to Abate Nuisance," the State Fire Marshal informed Plaintiff that he had "requested that the City of Seminole provide information to my office regarding the authority under which the notice was issued by the City of Seminole. After receiving and reviewing the requested information, I have determined that the Notice in dispute was not issued under the authority of 74 O.S. 2001, § 317. Instead, the Notice was issued pursuant to a municipal ordinance enacted by the city under the authority of 50 O.S. 2001, §16."

or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity is an affirmative defense that "protects all but the plainly incompetent or those who knowingly violate the law." *Medina v. Cram*, 252 F.3d 1124, 1127 (10th Cir. 2001) (internal quotation marks omitted). Although qualified immunity is often raised as an affirmative defense at the summary judgment stage, the Tenth Circuit has recognized the propriety of raising qualified immunity in a motion to dismiss:

> [T]he potential applicability of the qualified immunity defense will usually appear in the complaint. The complaint should include "all of the factual allegations necessary to sustain a conclusion that defendant violated clearly established law." Thus, a defendant could, prior to filing an affirmative defense, challenge the complaint under Fed.R.Civ.P. 12(b)(6) on the ground that he or she is entitled to qualified immunity because the pleaded facts failed to show that his or her conduct violated clearly established law of which a reasonable person would have known. Similarly, the defendant could raise the immunity issue in a motion for summary judgment. In either case, once the defense has been raised, the court must allow the plaintiff the limited opportunity allowed in Fed.R.Civ.P. 12(b)(6) and 56 to come forward with facts or allegations sufficient to show both that the defendant's alleged conduct violated the law and that that law was clearly established when the alleged violation occurred. Unless such a showing is made, the defendant prevails.

*Pueblo Neighborhood Health Centers, Inc. v. Losavio*, 847 F.2d 642, 645-646 (10th Cir. 1988) (internal citations omitted). The Tenth Circuit further explained that:

> [T]he trial judge is burdened with a responsibility at an early stage, to make determinations of law based upon what the clearly established law governing the case was at the time of the challenged acts. Once the issue of qualified immunity is properly injected in the case, either by a motion to dismiss, an affirmative defense, or a motion for summary judgment, the plaintiff is obliged to present facts which if true would constitute a violation of clearly established law.

*Id.* Therefore, a proper qualified immunity analysis at the dismissal stage involves two steps: the court "must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all, and, if so, proceed to determine whether that right was clearly established at the time of the alleged violation." *Moya v. Schollenbarger*, 465 F.3d 444, 455 (10th Cir. 2006).

In determining whether qualified immunity shields Doner from liability, this court *must* consider whether there has been a deprivation of an actual constitutional right before determining whether the law was clearly established. *McCook v. Spring Sch. Dist.*, 44 Fed App'x 896, 902 (10th Cir. 2002) ("[We] insis[t] upon turning to the existence or nonexistence of a constitutional right as the first inquiry"). In addition, broad invocation of due process rights is not enough; this Court must evaluate whether Plaintiff has properly pled a violation of those rights. *Moya,* 465 F.3d at 455.

In the present case, Plaintiff's complaint makes the following factual allegations as to Doner's conduct:

> Since the building was still standing after the controlled burn fire, also without notice to Plaintiff as property owner or professional consultation but for alleged safety concerns, Lemmings immediately procured its demolition on January 8, 2007 by independent wrecking contractor Defendant Doner, even of the parts not substantially damaged by fire.
> ...
>
> At all time relevant, by virtue of the terms of his bond and public liability insurance, licensure, training, experience, and record keeping as a heavy equipment operator, Defendant Doner knew or should have known of the ordinary and customary practices of his trade as would protect private property rights, which duties and safeguards he flagrantly ignored or failed to employ when he undertook demolition work without validating questionable representations.
> ...
>
> As the result of the actions of the said Defendan[t] Doner, Plaintiff has been deprived of his rights and privileges to use his property under the United States Constitution and its laws, without due process, in violation of 42 U.S.C. 1983.

(Pl.'s Compl. ¶¶ 18, 34-35 at 4, 6-7.) In responding to Doner's raising of the qualified immunity defense, Plaintiff fails to allege any other facts that might assist this Court in determining whether a constitutional violation has been properly alleged. Plaintiff instead "do[es] not address the conduct of the Fire Department and the other defendants nor the structural integrity of the building." (Pl.'s Resp. at 2.) The Court, therefore, is left with simply the facts as alleged by Plaintiff in his

complaint. Thus, taking everything the Plaintiff alleges in his complaint as true, the Court is presented with the following factual scenario: Plaintiff's church building caught on fire. After the fire was extinguished, the City concluded that the building was a hazard to public safety. Therefore, Doner was hired by the City to partially demolish the church building. Doner did demolish, or partially demolish, the church building. Plaintiff was not given a hearing prior to this demolition. Based upon his failure to allege that the church building posed no hazard to public safety, Plaintiff's legal claim seems to be that the partial demolition of his church building without a hearing would violate due process under *any* set of circumstances. The question, therefore, is whether what Plaintiff alleges amounts to the deprivation of an actual constitutional right.

The Supreme Court has stated that "due process ordinarily requires an opportunity for 'some kind of hearing' prior to the deprivation of a significant property interest." *Hodel v. Virginia Surface Mining and Recl. Ass'n*., 452 U.S. 264, 299 (1981); *Miller v. Campbell County*, 945 F.2d 348, 353 (10th Cir. 1991). However, where the state is confronted with an emergency, it may deprive an individual of his or her property without first providing a hearing. *Id.* at 299-300. It clear that there is no due process right to a hearing prior to *all* deprivations of property interests. However, that appears to be the right that Plaintiff is asserting. Based upon the clear Supreme Court precedent set forth above, it is apparent that no such broad constitutional right exists. Therefore, to the extent that Plaintiff claims that the partial demolition of his church building without a hearing violated due process because a hearing must always be given prior to such deprivations of property, Plaintiff has failed to allege a cognizable due process violation.

The Court thus does not reach the second prong of its qualified immunity analysis and does not pass on the question of whether Doner is entitled to qualified immunity. *See Moya,* 465 F.3d at

458. Instead, in undertaking its mandated analysis to determine whether qualified immunity applies, the Court finds a deficiency in Plaintiff's complaint that cannot be favorably resolved to preserve Plaintiff's § 1983 claim. Plaintiff has simply failed to allege any set of facts which would give rise to a cognizable constitutional violation. Because of that deficiency, Plaintiff has failed to state a valid § 1983 against Doner.

Therefore, the Court does not reach the question of whether Doner is entitled to qualified immunity, but instead dismisses Doner from the case based upon Plaintiff's failure to state a viable constitutional violation that would support a § 1983 claim against Doner. Doner's Rule 12(b)(6) Motion to Dismiss based on the Defense of Qualified Immunity is therefore GRANTED for the reasons set forth above.

## **Conclusion**

For the reasons set forth above, Doner's Rule 17(a) Motion to Dismiss is DENIED, Doner's Rule 19(a) Motion to Join a Necessary Party is GRANTED, Doner's Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim is DENIED, and Doner's Rule 12(b)(6) Motion to Dismiss based on the Defense of Qualified Immunity is GRANTED, on the grounds that Plaintiff has failed to state a cognizable constitutional violation that would support his §1983 claim.

IT IS SO ORDERED this 17th day of October, 2007.

James H. Payne
United States District Judge
Eastern District of Oklahoma