IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| WILLIAM W. CHOATE, P.E., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 07-CV-206-JHP |
| | ) | |
| ROY EDWARD LEMMINGS, individually, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER and OPINION

Before the Court are Defendant Roy Edward Lemmings' Motion for Summary Judgment [Docket No. 183] and Plaintiff William W. Choate's Response in Opposition [Docket No. 190]. Because the Court finds that Defendant is entitled to qualified immunity, Defendant's Motion for Summary Judgment is GRANTED.

## BACKGROUND

In 2005, Plaintiff purchased a church building located at 401 N. Second Street in Seminole, Oklahoma. Prior to Plaintiff's purchase of the building, officials of the City of Seminole had issued numerous notices and posted warning signs concerning various building code violations. After Plaintiff's purchase of the building, he argued with the city's Office of Code Enforcement ("OCE") regarding the code violations and its designation of the property as a public nuisance.

On January 7, 2007, a fire destroyed significant portions of the building's exterior wall. The Seminole Fire Department, including Fire Chief Roy Lemmings and Assistant Fire Chief Bryant Baker, were called to the scene of the fire and contained the blaze. After the fire,

1

Lemmings and Baker determined that the building's remains were hazardous to the public. Lemmings consulted with the State Fire Marshall and then hired contractor Troy Doner to raze the building. The remainder of the building was razed by Doner on January 8, 2007. Subsequently, City Manager Steve Saxon issued an abatement order declaring the building's remains a public nuisance. Plaintiff challenged the order, however, the order was upheld after an administrative hearing was conducted. Plaintiff appealed the administrative ruling to the Seminole City Council which held a special public hearing and voted to uphold the order.

On July 3, 2007, Plaintiff instituted the present action in this Court, asserting claims against the various individuals and governmental entities involved in responding to the fire and the demolition of the building. Plaintiff's Complaint [Docket No. 2] asserts claims under 42 U.S.C. §§ 1983, 1985, 1995, and 18 U.S.C. §§ 241, 247. Specifically, Plaintiff alleged that Lemmings, Baker, Doner, Saxon, and Angela DeGraffenreid (an employee of the Oklahoma Gas and Electric Company) unconstitutionally deprived him of the use of his property in violation of 42 U.S.C. §§ 1983. Plaintiff also brought claims against the State of Oklahoma and the City of Seminole challenging the constitutionality of certain state statutes. Additionally, Plaintiff sought injunctive relief against the City of Seminole regarding the removal of the building's remains.

The Court denied Plaintiff's request for injunctive relief and granted the various motions to dismiss filed by the defendants, eventually terminating the case. Of particular importance to the current motion is the Court's Order granting Lemmings, Baker, and Saxon's Motion to Dismiss on the basis of qualified immunity [Docket No. 95]. Plaintiff appealed the Court's denial of his motion for a preliminary injunction [Docket No. 84], the Court's dismissal Lemmings, Baker and Saxon [Docket No. 95], and the Court's dismissal of OCE and

DeGraffenreid [Docket No. 127]. For procedural purposes, the Tenth Circuit consolidated Plaintiff's appeals. On September 22, 2008, the Tenth Circuit issued an Order and Judgment affirming in part, reversing in part, and remanding the case for further proceedings [Docket No. 146]. The Circuit Court affirmed this Court's denial of a preliminary injunction as well as this Court's dismissal of all the defendants with the exception of Roy Lemmings. In regard to Lemmings, the Circuit Court reversed this Court's Order dismissing Lemmings and remanded the action for further proceedings.

Plaintiff's claims against Lemmings are based on the fact that Lemmings decided that Plaintiff's building posed a danger to the public and hired Doner to raze the building without first conducting a hearing on the issue. Plaintiff alleges Lemmings' actions deprived him of his property without due process. In the Order dismissing Lemmings, the Court noted that clear precedent exists allowing the deprivation of property interests without a hearing in emergency situations. Based on this precedent, the Court concluded that Lemmings was entitled to qualified immunity for his decision because he was not objectively unreasonable in believing that their actions were not in violation of any clearly established constitutional rights.

The Circuit Court's analysis of this Court's dismissal of Lemmings focused primarily on the procedural posture of the dismissal. In finding that Plaintiff had sufficiently stated a § 1983 claim[1] against Lemmings, the Circuit Court pointed out the differing standards applicable to a qualified immunity defense asserted via a Rule 12(b)(6) motion to dismiss, as opposed to a

---

[1] Plaintiff originally brought a § 1983 claim as well as claims under 42 U.S.C. §§ 1985 & 1995 and 18 U.S.C. §§ 241 & 247. The Tenth Circuit found that Plaintiff only pursued his § 1983 claim on appeal. Therefore, the only claim remanded to this Court was the § 1983 claim and the other claims will not be addressed.

qualified immunity defense raised in a Rule 56 summary judgment motion. [Docket No. 146, at 11]. The Court explained that the Tenth Circuit has expressly rejected a heightened pleading standard for civil rights plaintiffs facing a qualified immunity defense and § 1983 plaintiffs are not obligated to plead around the defense. [Docket No. 146, at 13]. As a result, Plaintiff was only required to make two allegations in order to state a cause of action: (1) that Plaintiff was deprived of a federal right; and (2) that the person who deprived him acted under the color of state law. [Docket No. 146, at 13]. The Circuit Court found that these allegations, which need not be pled with specificity, were present in Plaintiff's Complaint. The Circuit Court agreed that, depending on the facts of the situation, Lemmings may have been justified in making his decision without first holding a hearing under the emergency exception. However, the Circuit Court found that "[t]he problem with the district court's analysis is that it erroneously placed the burden on Choate to plead the absence of exigent circumstances, when the onus should have been on Lemmings to show the reasonableness of his belief that immediate demolition was necessary." [Docket No. 146, at 12]. Accordingly, the Circuit reversed and remanded this Court's dismissal of Lemmings and did not address the merits of Lemmings' qualified immunity defense.

On January 13, 2009, this Court held a status and scheduling conference. The parties were given an abbreviated schedule and allowed several months to conduct discovery specifically limited to the issue of qualified immunity. After the discovery cutoff, Lemmings filed the instant Motion for Summary Judgment [Docket No. 183]. In his motion, Lemmings again asserts qualified immunity and argues that his summary decision to raze the building falls within the emergency situation exception to the normal due process notice and hearing

4

requirements. In response, Plaintiff argues that no emergency situation existed, therefore, Lemmings is not entitled to qualified immunity.

## DISCUSSION

### A. Summary Judgment Standard

Summary judgment is proper where the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In making the summary judgment determination, the Court examines the factual record and draws reasonable inferences therefrom in the light most favorable to the non-moving party. *Simms v. Oklahoma*, 165 F.3d 1321, 1326 (10th Cir. 1999). The presence of a genuine issue of material fact defeats the motion. An issue is "genuine" if the evidence is significantly probative or more than merely colorable such that a jury could reasonably return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if proof thereof might affect the outcome of the lawsuit as assessed from the controlling substantive law. *Id.* at 249.

### B. Qualified Immunity

The doctrine of qualified immunity shields government officials from individual liability when they are performing discretionary functions that do not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity is an affirmative defense that "protects all but the plainly incompetent or those who knowingly violate the law." *Medina v. Cram*, 252 F.3d 1124, 1127 (10th Cir. 2001) (internal quotation marks omitted). Qualified immunity provides

5

"immunity from suit rather than a mere defense to liability," *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). The doctrine is designed to "preven[t] undue interference with public affairs by cutting short baseless litigation against government actors." *Mecham v. Frazier*, 500 F.3d 1200, 1203 (10th Cir. 2007).

Here, Lemmings claims he is entitled to qualified immunity from Plaintiff's § 1983 claim. Plaintiff's underlying constitutional claim is that he was deprived of his right to use his property without due process of law because Lemmings ordered the demolition of his building immediately after the fire without notice. Neither party disputes that Lemmings was a government official and was performing a discretionary function at the time in question. Therefore, the Court's qualified immunity analysis focuses on whether he violated a clearly established constitutional right of which a reasonable person would have known.

*1. Due Process and the Emergency Exception*

The Supreme Court has stated that "due process ordinarily requires an opportunity for 'some kind of hearing' prior to the deprivation of a significant property interest." *Hodel v. Virginia Surface Mining and Recl. Ass'n.*, 452 U.S. 264, 299 (1981); *Miller v. Campbell County*, 945 F.2d 348, 353 (10th Cir. 1991). However, where the state is confronted with an emergency, it may deprive an individual of his or her property without first providing a hearing. *Id.* at 299-300. Specifically, the Supreme Court has found that "[p]rotection of the health and safety of the public is a paramount governmental interest which justifies summary administrative action." *Id.* at 300. The question left for the Court then, is whether Lemmings' actions fall under this emergency situation exception to the normal due process notice requirements. The Court finds that Lemmings actions do fall under the emergency exception and, as a result, he is entitled to

qualified immunity.

Plaintiff's building was located on the corner of Evans Street and Second Street in downtown Seminole. The building was 28,000 square feet and three stories (40 feet) tall. It had 23 inch masonry walls with 15 ½ to 30 inch I-beams. It is undisputed that the building was a large structure and was located within a block of City Hall, the Seminole County Courthouse, and U.S. Highway 377/State Highway 99. During the fire, the west wall of this building collapsed into a nearby alley and parking lot. Both during and after the fire, the area around the building was barricaded for concerns that the building might collapse. The area remained barricaded in some form until the building was demolished.

Joseph Wilson and his family lived in a frame house immediately north of the building. The Wilson's house was approximately twenty feet from the north wall. According to Lemmings' affidavit which is attached to his motion, the north wall had several stress cracks. In some places, these cracks went all the way through the brick. [Docket No. 184-4]. Additionally, Lemmings asserts that there were numerous smoke stains and areas where the brick moved back and lost face. [Docket No. 184-4]. Lemmings also provides several pictures of Plaintiff's building taken the day of the fire which generally support his allegations.[2] [Docket No. 184-5, 6, 7, 8,]. The Wilson family was evacuated during the fire. They were not allowed to return home even after the fire was controlled because the north wall was determined to be unstable and posed a threat to the Wilson home.

---

[2] The pictures provided certainly show the smoke damage, stress cracks, and a collapsed west wall. Whether some of the cracks went all the way through the brick cannot be determined from the pictures, however, Plaintiff offers nothing to dispute these statements contained in Lemmings affidavit.

According to Lemmings, the south wall of the building was the fire department's biggest concern. The south wall had numerous stress cracks and had shifted so badly that it had broken the concrete cap that ran along the building. [Docket No. 184-4]. The south wall was bowing into Evans Street and the fire department believed that it posed an immediate and imminent threat to the people of Seminole. There was concern that the south wall was going to collapse into Evans Street. [Docket No. 184-4]. On January 7, 2007, Agent Jeremy Robbins with the Oklahoma State Fire Marshall's Office spoke with Assistant Chief Bryant Baker over the phone. Robbins was advised of the situation and he instructed Baker to make the building safe. He instructed Baker "to knock down the south wall at a minimum." [Docket No. 184-11]. He further advised Baker that he would not enter an unsafe building, and in his opinion, "a building missing a wall is too unsafe to enter and investigate." [Docket No. 184-11]. Subsequent to the demolition, Robbins reviewed the photographs of the building and concluded, based on the photos, that he would have instructed the fire department to raze the building for safety reasons. [Docket No. 184-11].

In his Response Brief, Plaintiff offers no evidence to contradict Lemmings' assertion that the building posed an imminent danger to public safety. First of all, it is somewhat difficult to understand Plaintiff's arguments. Some of the paragraphs in Plaintiff's brief are comprised mostly, if not entirely, of sentences ending in question marks. Other paragraphs, such as his introduction paragraph, contain only a single run-on sentence. The merits of Plaintiff's arguments are equally hard to follow. Plaintiff begins by alleging that the fire actually started several hours before the time Lemmings has listed as the official start time. Even if Plaintiff could support this allegation with the proper evidence, which he does not, the Court finds it

would be immaterial to the issue of whether the building posed a threat to public safety after the fire. Next, Plaintiff's discussion of the qualified immunity standard includes references to the 9-11 attack on the Pentagon and the Open Records Act, presumably Oklahoma's. It is unclear how either of these issues relate to qualified immunity. However, it does not appear that Plaintiff is arguing that the qualified immunity standard set forth in Lemmings' brief or the Court's previous Order [Docket No. 95] is erroneous.

Regarding his discussion of due process requirements, it appears Plaintiff does not dispute that an emergency situation based on danger to public safety can justify an exception to the normal pre-deprivation hearing requirements. Rather, it seems Plaintiff is arguing that no emergency situation existed in this case. Plaintiff, however, offers no evidence in support of this argument. There are no affidavits, depositions, response to interrogatories, or any other exhibits attached to Plaintiff's Response. The only evidence referenced by Plaintiff in his due process argument is a photograph allegedly attached to another pleading. Plaintiff stated that "[t]he post fire/pre-demolition photographs (Document 178, Ex. C) clearly shows there was no such impending collapse of any wall other that the breach at the point of incarceration." [Docket No. 190]. However, Docket Number 178 does not have an Exhibit C, or any other exhibits for that matter. Plaintiff also alleges that the evidence contradicts the statements contained in the affidavits produced by Lemmings, but again offers no evidence of his own, and concludes that the issue should be decided by a jury.

Finally, Plaintiff argues that several Oklahoma Statutes are unconstitutional. These statutes include Okla. Stat. tit. 50, § 16; Okla. Stat. tit. 51, § 154; and Okla. Stat. tit. 74, § 317. Although Plaintiff alleges these statutes are violative of the First, Fourth, Fifth, and Fourteenth

Amendments, he presents no comprehensible argument as to why they offend the Constitution. The Court finds no reason to address these baseless and unsupported allegations.

In *Waldron v. Rotzler,* 862 F. Supp. 763 (N.D.N.Y. 1994), a New York district court confronted a case with facts nearly identical to those in this case. In *Waldron*, a building adjacent to a public street had been gutted by fire. *Id.* at 766. City officials determined that the remains of the building posed a danger to the public because of debris falling off the building into the street *Id.* The city had an ordinance allowing for the demolition of buildings in instances where a danger was posed to the public safety. *Id.* at 767. Acting pursuant to that ordinance, the city demolished the building without giving the owner of the building notice and an opportunity to be heard. *Id.* The building owner brought suit against city officials under 42 U.S.C. §§ 1981, 1982, 1983. *Id.* The court granted summary judgement in favor of the defendants on the plaintiff's § 1983 claim alleging deprivation of property without due process. *Id*. 772. The court found that it was objectively reasonable for the city officials to believe their actions fit the emergency exception to the pre-deprivation hearing rule, and thus the defendants were entitled to qualified immunity. *Id.* In reaching its decision on the reasonableness of the defendants' actions, the court relied on photographs of the fire-gutted building as well as affidavits of individuals who observed the building after the fire. *Id*. Finally, the court found the plaintiff's allegation that the city ordinance was unconstitutional did not render the defendants' conduct unreasonable. *Id*.

Although not binding authority, the Court finds the rationale of the *Waldron* court persuasive and applicable to the case at hand. Similar to the defendants in *Waldron*, Lemmings determined that Plaintiff's building posed a danger to the public and demolished the remains.

Both the defendants in *Waldron* and Lemmings acted pursuant to a city ordinance which permitted summary abatement of nuisances that constitute a danger to the safety of the general public. [Docket No. 184-12] (Seminole City Ordinance Section 9-415(A)). Like the defendants in *Waldron*, Lemmings supported his decision with photographs of the building and affidavits of individuals who observed the building and participated in the decision making process. [Docket Nos.184-4,10, 11]. Plaintiff purports to dispute the evidence offered by Lemmings, but unsupported or conclusory allegations are not sufficient to rebut factual proof offered in support of a summary judgment motion. *See Conway v. Smith*, 853 F.2d 789, 792 n.4 (10th Cir. 1988). Based on the facts provided by Lemmings, the Court finds that he acted objectively reasonable in believing that his actions fell under the emergency situation exception. Thus, Lemmings is entitled to qualified immunity because his actions did not violate clearly established law.

## **CONCLUSION**

For the reasons stated above, Defendant Roy Edward Lemmings' Motion for Summary Judgment is hereby GRANTED.

IT IS SO ORDERED this 10th day of August, 2009.

_____
James H. Payne
United States District Judge
Eastern District of Oklahoma